ANNA B. ZIMMERMAN, Appellee, v. GEORGE N. FELGAR et al., Appellees; MARY GRACE HELPHREY et al., Appellants.

**VENDOR AND PURCHASER:** Vendor's Lien—Rights of Transferee of Purchase-Money Notes. Whatever right, interest, or lien the transferee of the purchase-money notes for land may have is not enforcible against a purchaser of the land who pays for the land without actual or constructive knowledge that said purchase-money notes are outstanding in the hands of third parties.

*Appeal from Henry District Court.*—JAMES D. SMYTH, Judge.

FEBRUARY 12, 1924.

SUIT in equity, to quiet title to a quarter section of land. The defendants, by way of answer and cross-bill, claim the

benefit of a vendors' lien upon the property, they being the purchasers and assignees of purchase-money notes of which the plaintiff had notice at the time of her purchase of the real estate. There was a decree for the plaintiff, and the defendants appeal. —*Affirmed.*

*McAdam & Nelson* and *Johnson, Donnelly & Lynch,* for appellants.

*Galer & Galer* and *Elgar & Kinney,* for appellees.

EVANS, J.—In July, 1920, the plaintiff purchased by executory contract the quarter section in controversy from Metzger, such contract to be fully performed on March 1, 1921. Metzger was at that time in possession of the farm under a contract of purchase with Felgar, the holder of the fee title. On March 1, 1921, by mutual arrangement between Felgar and Metzger and the plaintiff, Felgar conveyed the property directly to the plaintiff by warranty deed. Metzger had purchased the property on March 1st preceding, and had executed to Felgar his promissory notes for the purchase price, all of which were described in the recorded contract of purchase and sale between Felgar and Metzger. Metzger had purchased for $32,000, and had sold to plaintiff for $52,000. On March 1, 1921, the plaintiff was required to pay the full purchase price of $52,000. She did pay the same. Before doing so, she was advised by Metzger and Felgar what amount thereof was to be paid to Felgar, the holder of the fee title, and what amount was to be paid to Metzger. She made the payment accordingly. At the time of doing so, she required Felgar and Metzger to go with her to the county recorder's office and to cancel mutually the bond or contract for a deed held by Metzger from Felgar. Both of these parties signed the cancellation of such bond. Mrs. Zimmerman paid to each of them the amount of the purchase price which they had mutually agreed on, believing that she had paid the money to the persons entitled thereto, and that she was receiving a clear and absolute title. The claim of the defendants arose in this wise: They are the executors of the estate of F. P. Helphrey. Felgar had borrowed from the decedent a large amount of money, and

had transferred to him as collateral security a long list of notes, including the notes of Metzger to the amount of $14,000. Felgar never paid his debt. The defendants claim that Felgar had a vendors' lien for the purchase price, and that such lien passed to Helphrey by the transfer of the purchase-money notes. The plaintiff does not concede the legal proposition thus put forth by the defendants, but contends in substance that the lien of Felgar for the purchase money was created by express contract, and that he held the legal title of the property as his security, and that there was no occasion or place for the operation of the statutory vendors' lien. She contends also that there could be no vendors' lien in favor of Felgar as against the purchaser from Metzger.

In view of our conclusion of fact upon the record, we are not disposed to wrestle with the legal question thus raised at this time.

Concededly, the plaintiff had no constructive notice of the defendants' lien, if any. The burden was, therefore, upon the defendants to show actual notice thereof to the plaintiff before she parted with the consideration. This burden is recognized by defendants' counsel. The contention is that such burden was fully met. To this end, reliance is had upon certain testimony by Metzger as a witness for the defendants, to the effect that he told the plaintiff about these outstanding notes. According to the testimony of the plaintiff, the only conversation between herself and Metzger on that subject was had after the transaction had been closed at Mount Pleasant, and while they were on the way returning to Winfield. A careful consideration of the evidence of these two witnesses in the light of all the circumstances surrounding them, as disclosed by the record, satisfies us that the correct version is that of the plaintiff. Metzger testified, in the first instance, that the plaintiff was present during a conversation between him and Felgar concerning these notes, the substance of which conversation would imply that the notes were held by third parties, and were not in the control of Felgar.

On cross-examination, he testified as follows:

"The deed was given to her right there when she paid the money, and that was the evening of March 1st. Nothing was

said to Mrs. Zimmerman that night about these notes that were outstanding, but I was after Mr. Felgar for them. I couldn't say,—it might have been the next day that I talked to Mrs. Zimmerman and told her I had a contract with Mr. Felgar to take up these notes. I think Mrs. Zimmerman was present when that contract, Exhibit 7, was drawn. I think she knew about that. After the deal was all completed, when I talked to her about taking up these notes, she told me I ought to get my notes back. I couldn't say whether that was the next day, the second day of March, as I don't remember.''

On redirect examination, he testified:

''During the times that I saw Mrs. Zimmerman and before this Exhibit 7 was signed, I had a talk with her *about* these outstanding notes that are referred to in this Exhibit 7.''

Being recalled, he testified again:

''I saw Mrs. Zimmerman the latter part of February in *reference* to these notes.''

The contract, Exhibit 7, by Felgar and Metzger referred to in Metzger's testimony is quite indefinite in its reference to the notes. Its opening recital is:

''That whereas the said party of the first part [Felgar] *holds* notes to the amount of $31,400.00,'' etc.

It will be noted that the testimony of Metzger on this subject is quite indefinite. To say that he ''had a talk with her *about* these outstanding notes,'' or that he saw her in ''February in *reference* to these notes,'' stops short of the vital fact. An implication is claimed by defendants from these statements that Metzger told Mrs. Zimmerman, before she parted with her consideration, that parties other than Felgar held these notes. If that was the implication intended by the witness, he could as easily have testified directly to that effect.

In argument, both parties denounce Felgar as having perpetrated a criminal fraud. This charge of criminality on Felgar's part implies fraudulent concealment on his part. If he frankly disclosed the facts to Metzger, and through Metzger to the plaintiff, before she parted with her consideration, wherein was his criminality? The testimony of plaintiff on this question has the corroboration of greater probability and of greater consistency with all the conceded circumstances surrounding the

parties.    She knew that Metzger's purchase-money notes were outstanding.    That brought her in contact with his vendor, Felgar.  Metzger had a large margin of profit in the transaction. She paid to Metzger and to Felgar severally the respective amounts which both represented to her as due to each severally. If she had known that Felgar had disposed of the notes, and that the holders, rather than Felgar, were entitled to the money, she could have had no motive to ignore that fact.    Without any doubt, she manifested anxiety and diligence to pay her money where it should go, and so as to fully clear the title she was receiving.    Her testimony on the trial was wholly consistent with her affirmative conduct at the settlement, as it appears without dispute.

The trial court found that she parted with her money without notice of any outstanding claims of the defendants or others.    Our study of the record satisfies us to the same effect. The decree below is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.